Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/06/2017 09:08 AM CST

State of Nebraska, appellee, v.
Dustin Chauncey, appellant.
___ N.W.2d ___

Filed January 6, 2017.    No. S-15-405.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Trial: Rules of Evidence.** A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value.

4. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.

5. **Motions for Mistrial: Appeal and Error.** The decision whether to grant a motion for mistrial will not be disturbed on appeal in the absence of an abuse of discretion.

6. **Motions to Dismiss: Appeal and Error.** Any error in a ruling on a motion to dismiss under Neb. Rev. Stat. § 29-1418(3) (Reissue 2016) based on the sufficiency of evidence before a grand jury is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence.

7. **Prosecuting Attorneys: Appeal and Error.** The decision to appoint a special prosecutor is addressed to the discretion of the trial court, and absent an abuse of discretion, such ruling will not be disturbed on appeal.

8. **Evidence: Words and Phrases.** Evidence is relevant if it tends in any degree to alter the probability of a material fact.

9. **Rules of Evidence.** Under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.

10. **Evidence: Words and Phrases.** Unfair prejudice means an undue tendency to suggest a decision based on an improper basis.

11. ____: ____. Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis.

12. **Criminal Law: Motions for Mistrial: Proof: Appeal and Error.** A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.

13. **Motions for Mistrial: Motions to Strike: Appeal and Error.** Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.

Appeal from the District Court for Scotts Bluff County: Leo Dobrovolny, Judge. Affirmed.

Todd W. Lancaster, of Nebraska Commission on Public Advocacy, for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Wright, Miller-Lerman, Cassel, Stacy, Kelch, and Funke, JJ.

Miller-Lerman, J.
## I. NATURE OF CASE
Following a grand jury investigation into the death of the 2-year-old daughter of Dustin Chauncey's girlfriend, a special prosecutor filed charges against Chauncey. Chauncey appeals

his conviction and sentence in the district court for Scotts Bluff County for intentional child abuse resulting in death. Chauncey assigns numerous errors addressed to the grand jury process and trial rulings. We affirm.

## II. STATEMENT OF FACTS

### 1. Background and Evidence at Trial

On July 11, 2008, police officers responding to a call to a house in Gering, Nebraska, found the body of 2-year-old Juliette Geurts. Juliette had lived in the house with her twin sister, Jaelyn Geurts; their mother, Charyse Geurts; and Chauncey, who was Charyse's boyfriend. Charyse's ex-boyfriend, Brandon Townsend, also lived in the house. When the first police officer entered the house, she saw Charyse on the floor next to Juliette's body, Chauncey pacing back and forth, and Townsend standing in a doorway holding Jaelyn.

Another officer who arrived at the house observed discoloration on Juliette's abdomen and a laceration on the left side of her head. An autopsy later revealed that Juliette's death had been caused by blunt force trauma and that the manner of death was homicide. The pathologist who conducted the autopsy testified that Juliette had been beaten to death and that she had sustained several injuries—including a subarachnoid hemorrhage in the brain, a lacerated liver, and bleeding into the mesentery—any one of which might have caused her death.

The first officer who had arrived at the house was unable to immediately communicate with Charyse and Chauncey because both were too emotional. Chauncey had identified himself to the officer using the first name "Roy," but the officer later learned that his first name was actually "Dustin." The officer was able to communicate with Townsend.

As part of the investigation of Juliette's death, the clothing she was wearing was sent to the state crime laboratory for testing. A stain on Juliette's shirt, which was found to include a sperm fraction and a nonsperm fraction, was tested

for DNA. It was determined that Chauncey was included as a major contributor to the DNA of the sperm fraction and a contributor to the DNA of the nonsperm fraction.

Townsend testified as follows at the trial in this case. Townsend had briefly dated Charyse before she began dating Chauncey, and he lived at the house with them in order to care for Juliette and Jaelyn. On the evening of July 10, 2008, Townsend, Charyse, Chauncey, and the girls had all attended a carnival. Juliette did not feel well at the carnival, and after they all returned home, Townsend put the girls to bed. Charyse went to check on the girls around 2 a.m. and discovered that Juliette was having a seizure. Charyse and Townsend decided that Juliette should be taken to the hospital. Chauncey at first resisted the idea of taking her to the hospital, but eventually Charyse and Chauncey took her to the hospital while Townsend stayed at home with Jaelyn. After they left, Townsend put Jaelyn back to bed and he went to the couch where he "end[ed] up laying down and passing out."

Townsend testified that the next thing he remembered was waking up around 11 a.m. the next day. Shortly after waking, he went to check on the girls and found Jaelyn already awake. He turned to wake up Juliette, and saw that her "bed had almost been crushed down to the ground . . . almost as if something really heavy had been on the bed." He saw Juliette "kind of like in the bed folding into it [a]nd, she was very purple and very stiff." Townsend went and picked up Juliette, while attempting to prevent Jaelyn from seeing Juliette's condition. Townsend carried Juliette to the room in which Charyse and Chauncey were sleeping. When Townsend entered the room, Chauncey jumped up and asked Townsend what was going on. Townsend told them that there was something wrong with Juliette. Chauncey grabbed Juliette from Townsend's arms and held her at arm's length from himself. Townsend heard Chauncey say, "'Oh, my fucking God, she is fucking dead. I need to fucking leave.'" Chauncey handed Juliette

back to Townsend, who took her to the living room and set her on the floor. Townsend tried to find a telephone, but Charyse was "very hysterical," and Chauncey said he could not find one. Townsend ran to a neighbor's house and asked them to call the police because he thought Juliette was dead. He returned to the house and saw that Charyse was crying and screaming Juliette's name, while Chauncey was getting dressed. Townsend testified that "[t]here was a discussion if anybody asked [Chauncey's] name, his name is not Dustin, his name is Roy."

In addition to Townsend's testimony described above and other evidence presented at trial, the State called Paul Cardwell as a witness. In 2014, Cardwell had been housed in the same unit as Chauncey at the Scotts Bluff County jail. Prior to questioning Cardwell, the State read the parties' stipulation to the jury to the effect that Cardwell had been convicted in federal court of three felony offenses involving fraud and that he had the potential of having his sentence reduced if the federal court determined that he had "provided substantial assistance to the government." Cardwell testified that in August 2014, Chauncey had discussed his case with Cardwell and another prisoner. Chauncey told them about the charges for which he was in jail and described the events of July 11, 2008, to them.

Cardwell's testimony regarding Chauncey's jailhouse statements was as follows: After Charyse and Chauncey had returned from taking Juliette to the hospital, they were having sex in the bedroom when Juliette came to the door of the bedroom asking for Charyse because she did not feel well. Chauncey was angry that Juliette had interrupted them, so he got out of bed and kicked her in the stomach. While he was still naked, he picked up Juliette to return her to her room, and he speculated that his sperm got on her shirt when he picked her up. Juliette was crying because of the kick to the stomach; because Chauncey wanted "her to shut up," he punched her in the upper chest area. Chauncey returned to

finish having sex with Charyse, and then he went to sleep. He was awoken around 11 a.m. by shouts that Juliette was not breathing. As they waited for police to arrive, Charyse and Chauncey decided that they would lie about his name because he was wanted on outstanding warrants.

## 2. Grand Jury Proceedings

Although an autopsy was conducted on Juliette's body on July 12, 2008, and the pathologist concluded that the manner of death was homicide, the State had not filed charges against anyone in connection with Juliette's death as of mid-2012. On July 11, 2012, certain community petitioners filed a petition in the district court for Scotts Bluff County for a grand jury investigation into Juliette's death. On August 8, the court appointed James L. Zimmerman as a special prosecutor. In the appointment order, the court found that this was "an appropriate case to appoint a special prosecutor to investigate and prosecute this matter."

Zimmerman presented the case to a grand jury. On January 14, 2013, Zimmerman filed an indictment, signed by the foreperson of the grand jury, in the district court. The indictment charged Chauncey with three counts: count I, intentional child abuse resulting in death; count II, manslaughter; and count III, providing false information to a peace officer. Counts II and III were dismissed prior to trial because the statute of limitations had expired on the offenses. The portion of the indictment charging child abuse resulting in death read as follows:

**COUNT I**
**Sec. 28-707(1)(b)**
**Penalty Sec. 28-707(6)**
That DUSTIN CHAUNCEY on or about July 11, 2008, then in Scotts Bluff County, Nebraska did knowingly or intentionally cruelly punish a minor child, Juliette Geurts, which resulted in the death of such child contrary to the statutes of the State of Nebraska.

### 3. Pretrial Motions

On the motion of the Scotts Bluff County Attorney, the district court appointed Zimmerman, under the authority of Neb. Rev. Stat. § 23-1204.01 (Reissue 2012), to act as a special deputy county attorney in the prosecution of Chauncey.

On February 5, 2014, Chauncey filed a motion to dismiss the indictment pursuant to Neb. Rev. Stat. § 29-1418(3) (Reissue 2016) "for the reason that the grand jury finding of probable cause is not supported by the record." Although the grand jury had considered additional evidence, Chauncey requested that the court review only Townsend's testimony to the grand jury in order to determine whether there was evidence supporting the probable cause finding. The State agreed to the request.

After reviewing Townsend's grand jury testimony, the court concluded that the evidence showed probable cause that Chauncey committed intentional child abuse resulting in death. The court therefore overruled Chauncey's motion to dismiss that count. In reaching this conclusion, the court stated that the standard for determining whether probable cause existed for a grand jury indictment was the same as the standard for a plea in abatement challenging the sufficiency of evidence at a preliminary hearing; to wit, the test is not whether guilt is established beyond a reasonable doubt, but whether the evidence "renders the charge against the accused within reasonable probabilities." The court's rulings with regard to the two other counts in the indictment are not set forth herein because those counts were otherwise dismissed prior to trial.

On August 1, 2014, Chauncey filed a motion to quash the indictment. He listed three grounds in support of the motion: (1) The appointment of Zimmerman as special prosecutor for the grand jury proceeding was improper; (2) regarding count I, Zimmerman incorrectly advised the grand jury to review a 2012 version of the statute setting forth the offense of child abuse resulting in death, when the correct version of the statute was the one in effect in 2008 when the alleged

offense occurred, see Neb. Rev. Stat. § 28-707 (Reissue 2008 & Cum. Supp. 2012); and (3) the statute of limitations had run on counts II and III. As noted, the court ultimately dismissed counts II and III based on the statute of limitations. However, the court found that Chauncey's first and second grounds for the motion to quash were without merit and it therefore overruled his motion to quash count I—intentional child abuse resulting in death.

With regard to the appointment of Zimmerman as special prosecutor for the grand jury proceeding, the court noted that Neb. Rev. Stat. § 23-1205 (Reissue 2012) provides that a district court may appoint an acting county attorney "[d]ue to the absence, sickness, disability, or conflict of interest of the county attorney and his or her deputies . . . ." The court found that a conflict of interest existed in this case because until the petition for a grand jury investigation into Juliette's death was filed in July 2012, the county attorney's office had declined to prosecute anyone for Juliette's death since its occurrence in July 2008. The court therefore found that the appointment of Zimmerman was proper.

With regard to Zimmerman's advice regarding the different versions of § 28-707, the court noted that count I as charged in the indictment regarding intentional child abuse resulting in death used the correct language of § 28-707(6) based on the 2008 version. The court stated, "Whether the grand jury may have been given erroneous advice, or may have followed erroneous advice, does not matter if the indicted offense is supported by the evidence, which it is."

### 4. Motion in Limine and Evidence
### Regarding DNA Sperm Fraction

Prior to trial, Chauncey filed a motion in limine, which in part addressed evidence of DNA testing that showed him to be a major contributor to the sperm fraction that was found on Juliette's shirt. He requested that the State be prohibited from offering or mentioning such evidence during voir dire,

opening statements, or trial without further hearing by the court. He argued that because there was no allegation he had sexually assaulted Juliette, evidence regarding a sperm fraction would be unfairly prejudicial, and that the State could adequately prove his presence at the scene by reference to the nonsperm fraction. The State responded that the sperm fraction would be more probative of Chauncey's identity as the perpetrator; the State's theory was that the nonsperm fraction could have been on Juliette's clothing for some time but the presence of the sperm fraction indicated more recent contact, because sperm is more likely to transfer when wet than when dry. At the conclusion of a hearing on the motion in limine, the court reserved its ruling with regard to DNA evidence related to the sperm fraction until the trial. The court reasoned that the State's arguments regarding the timing of the transfer of samples would need to be developed and considered with respect to foundation before the evidence was received. The court ordered the State to notify the court and the defense in advance of offering such evidence in order to allow time for objections and rulings on the evidence.

During opening statements, the prosecutor stated that the clothing Juliette was wearing was sent to the state laboratory for testing and that "the lab found on the little undershirt some sperm and [it] tested that sperm." Chauncey objected at this point, and the court instructed the jury to disregard the prosecutor's comments about sperm on the shirt. At the conclusion of opening statements, Chauncey moved for a mistrial and argued that the State had violated the court's order when it mentioned the sperm sample. The court overruled Chauncey's motion for mistrial, noting in part that the jury had been specifically advised to disregard the comments regarding the sperm fraction and that the jury had been instructed as a general matter that the comments of counsel were not evidence.

The court overruled another motion for mistrial when the State questioned Cardwell regarding jailhouse statements

Chauncey had made to Cardwell explaining how Chauncey's sperm might have gotten on Juliette's clothing. Finally, with regard to the motion in limine, before the State's DNA expert testified at trial, the court heard arguments by the parties and allowed Chauncey to voir dire the expert. Thereafter, the court overruled the motion in limine and allowed the DNA expert's testimony regarding testing of the sperm fraction.

### 5. CONCLUSION OF TRIAL

At the end of the trial, the court entered a judgment of conviction based on the jury's finding that Chauncey was guilty of intentional child abuse resulting in death. The court thereafter sentenced Chauncey to imprisonment for 80 years to life.

Chauncey appeals his conviction and sentence.

### III. ASSIGNMENTS OF ERROR

Chauncey claims that the district court erred when it (1) overruled his motion to dismiss the indictment, because the grand jury's finding of probable cause was not supported by the record; (2) overruled his motion to quash the indictment, because (a) the appointment of the special prosecutor was improper and (b) the special prosecutor misled the grand jury with inaccurate advice regarding the applicable law and penalties; (3) overruled his motion in limine to prohibit the State from presenting evidence regarding DNA testing of the sperm fraction; and (4) overruled his motions for mistrial made (a) after the prosecutor mentioned testing of sperm found on Juliette's clothing during opening statements and (b) after the prosecutor questioned Cardwell regarding Chauncey's statements explaining how his sperm might have gotten on Juliette's clothing.

### IV. STANDARDS OF REVIEW

[1-4] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Draper,*

*ante* p. 88, 886 N.W.2d 266 (2016). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id*. A trial court exercises its discretion in determining whether evidence is relevant and whether its prejudicial effect substantially outweighs its probative value. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id*.

[5] The decision whether to grant a motion for mistrial will not be disturbed on appeal in the absence of an abuse of discretion. *State v. Mitchell*, 294 Neb. 832, 884 N.W.2d 730 (2016).

## V. ANALYSIS

### 1. Grand Jury Proceedings—Motion to Dismiss: Any Error in District Court's Ruling on Chauncey's Motion to Dismiss the Indictment Based on Lack of Probable Cause Was Cured by Finding at Trial of Guilt Beyond a Reasonable Doubt

Chauncey first claims that the district court erred when it overruled his motion to dismiss the indictment on the basis that the grand jury's finding of probable cause to indict was not supported by the grand jury record. As explained below, we conclude that error, if any, in the court's ruling on the motion to dismiss was cured by the trial jury's finding of guilt beyond a reasonable doubt.

Chauncey moved the district court to dismiss the indictment pursuant to § 29-1418(3), which provides as follows:

> The district court before which the indicted defendant is to be tried shall dismiss any indictment of the grand jury if such district court finds, upon the filing of a motion by the indicted defendant based upon the grand jury record without argument or further evidence, that the

grand jury finding of probable cause is not supported by the record.

Based on its review of Townsend's grand jury testimony, the court concluded that the record presented to the grand jury supported the grand jury's finding that there was probable cause that Chauncey committed intentional child abuse resulting in death, and it therefore overruled the motion to dismiss the indictment.

Both Chauncey and the State acknowledge in their briefs on appeal that we have not set forth a standard of review of a district court's ruling on a motion to dismiss an indictment under § 29-1418(3), and both parties acknowledge that with respect to the question of proof required, "probable cause" is a flexible standard. With respect to the standard of review, Chauncey urges the standard used to review a ruling on a motion to suppress whereas the State urges the standard used to review a sufficiency of the evidence claim. However, we need not resolve the standards issue, because we conclude that error, if any, in the district court's determination that the grand jury's finding that probable cause was supported by the grand jury record was cured when the trial jury found Chauncey guilty beyond a reasonable doubt.

The State notes that we have held that an error in a ruling on a plea in abatement challenging whether there was sufficient evidence to bind a case over for trial is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence. See *State v. Green*, 287 Neb. 212, 842 N.W.2d 74 (2014). The State suggests we apply the same reasoning to a ruling on a motion to dismiss an indictment for lack of evidence, because there is no meaningful distinction between a probable cause finding after a preliminary hearing and a probable cause finding after a grand jury proceeding. The State's argument finds support in jurisprudence elsewhere.

We note, for example, that Colorado has a statute, Colo. Rev. Stat. Ann. § 16-5-204(4)(k) (West 2016), which uses

the same language as § 29-1418(3). The Supreme Court of Colorado has said that "[t]he district court's function in reviewing the grand jury record pursuant to section 16-5-204(4)(k) is similar to the role of the court at a preliminary hearing in determining the existence or absence of probable cause." *People v. T & S Leasing, Inc.*, 763 P.2d 1049, 1050 (Colo. 1988), citing *People v. Luttrell*, 636 P.2d 712 (Colo. 1981). The Colorado Court of Appeals in *People v. Tyler*, 802 P.2d 1153, 1154-55 (Colo. App. 1990), noted this similarity and the holdings in Colorado precedent that "once a defendant has been found guilty beyond a reasonable doubt, the issue of probable cause found at a *preliminary hearing* becomes moot." The Colorado Court of Appeals in *People v. Tyler* extended this reasoning and concluded that whether there was probable cause before the grand jury became moot after a defendant has been found guilty beyond a reasonable doubt by a trial jury. *Id*.

[6] We agree with the Colorado court's reasoning and apply it here. In Nebraska, pursuant to Neb. Rev. Stat. § 29-1809 (Reissue 2016), a "plea in abatement may be made when there is a defect in the record which is shown by facts extrinsic thereto." A plea in abatement is used to challenge the sufficiency of the evidence at a preliminary hearing; to resist a challenge by a plea in abatement, the evidence received by the committing magistrate need show only that a crime was committed and that there is probable cause to believe that the accused committed it. *State v. Lasu*, 278 Neb. 180, 768 N.W.2d 447 (2009). Thus, a plea in abatement challenging evidence at a preliminary hearing has a purpose similar to a motion to dismiss under § 29-1418(3) challenging a grand jury's finding of probable cause. Because the purposes of the two procedures are similar, and because error in a ruling on a plea in abatement is cured by a subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence, see *State v. Green, supra*, we similarly hold that any error in a ruling on a motion to dismiss under § 29-1418(3) based on the sufficiency of evidence before a grand jury is cured by a

subsequent finding at trial of guilt beyond a reasonable doubt which is supported by sufficient evidence.

In the present case, the trial jury found Chauncey guilty beyond a reasonable doubt of intentional child abuse resulting in death. Chauncey does not dispute that there was sufficient evidence to support the conviction. We therefore conclude that error, if any, in the court's ruling on the motion to dismiss for lack of probable cause under § 29-1418(3) was cured by the trial jury's finding of guilt beyond a reasonable doubt. We reject Chauncey's first assignment of error.

### 2. GRAND JURY PROCEEDINGS—MOTION TO QUASH: DISTRICT COURT DID NOT ERR WHEN IT OVERRULED CHAUNCEY'S MOTION TO QUASH INDICTMENT BASED ON ALLEGED IRREGULARITIES AND PROSECUTORIAL MISCONDUCT IN GRAND JURY PROCEEDINGS

Chauncey next claims that the district court erred when it overruled his motion to quash the indictment. He argues that the court erred when it rejected two of his arguments: (1) that the appointment of the special prosecutor was not proper and (2) that the special prosecutor gave the grand jury erroneous advice regarding the applicable law and penalties. He contends that these errors amounted to "irregularities and prosecutorial misconduct." Brief for appellant at 38. We conclude that neither claim has merit and that the district court did not err when it overruled the motion to quash.

As a preliminary matter, before addressing the merits of each claim, we note that similar to its arguments regarding the motion to dismiss based on the existence of probable cause, the State contends that any errors in the grand jury proceedings raised by the motion to quash were effectively cured or rendered harmless by the trial jury's finding of guilt beyond a reasonable doubt. And, as a further preliminary matter, we note that these issues were brought on by a motion to quash. It has been observed that generally, a motion in the nature to

dismiss is permitted in criminal cases in various forms, including, inter alia, a motion to quash and a plea in abatement. See *State v. Nearhood*, 2 Neb. App. 915, 518 N.W.2d 165 (1994). See, e.g., Neb. Rev. Stat. § 29-1808 (Reissue 2016) and §§ 29-1418(4) and 29-1809. No question has been raised regarding the form of Chauncey's motion, and because of our disposition, we proceed on the basis that the issues were properly before the court.

As explained below, we determine that the district court did not err when it appointed a special prosecutor, nor was there misconduct in the prosecutor's legal advice to the grand jury. Because there was nothing to cure, we need not consider the State's argument that the errors that were the subject of the motion to quash were rendered harmless by the trial jury's finding of guilt beyond a reasonable doubt.

#### (a) Appointment of Special Prosecutor

As the court noted in its order overruling the motion to quash, § 23-1205 provides that a district court may appoint an acting county attorney in any investigation, appearance, or trial "[d]ue to the absence, sickness, disability, or conflict of interest of the county attorney and his or her deputies . . . ." In this case, the court found a "disability or conflict" under § 23-1205. In its order overruling Chauncey's motion to quash, the court reasoned that the county attorney's office had a conflict of interest under § 23-1205, because until the petition for a grand jury investigation into Juliette's death was filed in July 2012, the county attorney's office had declined to prosecute anyone in the 4 years since her death. The inference was that the county attorney did not have confidence in the sufficiency of his evidence.

At the hearing on the motion to quash, the court received evidence, including an affidavit offered by the State, prepared by the person who was the county attorney at the time the grand jury was convened. The county attorney stated, inter alia, that he was aware that one of the primary organizers

of the petition to call the grand jury had been vocal in her dissatisfaction with his office regarding the investigation of Juliette's death. The appointment of a special prosecutor would remove this perceived unfairness and promote confidence in the judicial system. See *State v. Kinkennon*, 275 Neb. 570, 747 N.W.2d 437 (2008).

[7] The decision to appoint a special prosecutor is addressed to the discretion of the trial court, and absent an abuse of discretion, such ruling will not be disturbed on appeal. See *State v. Edwards*, 286 Neb. 404, 837 N.W.2d 81 (2013). We determine that the district court did not abuse its discretion when it found that the county attorney's office had a disability or conflict of interest as broadly understood under § 23-1205 and appointed the special prosecutor. We therefore conclude that the court did not err when it overruled the motion to quash the indictment on such basis.

### (b) Special Prosecutor's Advice to Grand Jury

Chauncey asserts that the special prosecutor incorrectly advised the grand jury to review the 2012 version of § 28-707, whereas the correct version of the statute was the 2008 version in effect when the offense occurred. In its order overruling the motion to quash, the district court noted that the charge in the indictment regarding child abuse resulting in death used language consistent with § 28-707 from the 2008 version. The record also shows that the foreperson signed the indictment containing the correct version of § 28-707, intentional child abuse resulting in death.

Chauncey notes that the record of the grand jury proceeding indicates that the special prosecutor provided the grand jury with both the 2008 and the 2012 versions of § 28-707 and commented thereon. Chauncey argues that it was error for the special prosecutor to advise the grand jury to consult the 2012 version, because the alleged crime occurred in 2008 and any amendments made after 2008 would not be applicable.

As the court noted, the language in the indictment reflected the correct language from the 2008 version, which provides in relevant part as follows:

> (1) A person commits child abuse if he or she knowingly, intentionally, or negligently causes or permits a minor child to be:
>
> . . . .
>
> (b) Cruelly confined or cruelly punished;
>
> . . . .
>
> (6) Child abuse is a Class IB felony if the offense is committed knowingly and intentionally and results in the death of such child.

The indictment that was filed as a result of the grand jury proceeding provided as follows with regard to the charge for child abuse resulting in death:

### COUNT I
### Sec. 28-707(1)(b)
### Penalty Sec. 28-707(6)

> That DUSTIN CHAUNCEY on or about July 11, 2008, then in Scotts Bluff County, Nebraska did knowingly or intentionally cruelly punish a minor child, Juliette Geurts, which resulted in the death of such child contrary to the statutes of the State of Nebraska.

The charge followed the language of the statute and stated that the crime charged was "committed knowingly or intentionally [and] resulted in the death of such child." The indictment did not include the word "negligently." The indictment did not specify the grading of the offense, but the reference to "**Penalty Sec. 28-707(6)**" and the inclusion of the language "knowingly or intentionally" and "resulted in the death of such child" indicate that the offense was charged as a Class IB felony under § 28-707(6) of the 2008 version.

Although the indictment followed the 2008 language of § 28-707(1)(b), Chauncey argues that amendments reflected in the 2012 version—possibly relied on by the grand jury—could have affected how the grand jury viewed the evidence and

its determination of whether the evidence supported a charge under the statute. Intentional child abuse resulting in death remained a Class IB felony under both versions. However, the penalty subsection (6) in the 2008 version had been moved to subsection (8), and the new penalty subsection (6) addressed negligent rather than knowing and intentional child abuse resulting in death.

Chauncey argues that the grand jury's having both versions might have caused confusion, because although the grand jury agreed to a charge with a penalty under § 28-707(6), some jurors may have been referring to the 2008 version of penalty subsection (6), and some may have been referring to the 2012 version of penalty subsection (6). Chauncey also notes that the 2012 version of § 28-707 included language defining "negligently" which was not included in the 2008 version, and he contends that the special prosecutor gave the grand jury a definition of "reckless" that did not follow the statutory language.

Chauncey acknowledges that there is little precedent in this state regarding challenges to an indictment based on alleged irregularities in the grand jury proceedings, and he refers us to the U.S. Supreme Court standard for review of alleged irregularities, including prosecutorial misconduct in grand jury proceedings applicable in federal courts. In *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988), the Court held that where dismissal is sought for nonconstitutional error, "as a general matter, a district court may not dismiss an indictment for errors in the grand jury proceedings unless such errors prejudiced the defendants." The Court further stated that "[t]he prejudicial inquiry must focus on whether any violations had an effect on the grand jury's decision to indict. If violations did substantially influence this decision, or if there is grave doubt that the decision to indict was free from such substantial influence, the violations cannot be deemed harmless." *Id.*, 487 U.S. at 263.

For completeness, we note that according to the U.S. Supreme Court in *Bank of Nova Scotia*, 487 U.S. at 257, a presumption of prejudice will be allowed where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." The Court gave as examples racial discrimination in the selection of grand jurors, *Vazquez v. Hillery*, 474 U.S. 254, 106 S. Ct. 617, 88 L. Ed. 2d 598 (1986), and the exclusion of women as grand jurors, *Ballard v. United States*, 329 U.S. 187, 67 S. Ct. 261, 91 L. Ed. 2d 181 (1946). This presumption of prejudice is not applicable to the instant challenge.

Under the standards from *Bank of Nova Scotia, supra*, which apply to this case, we conclude that the district court did not err when it rejected Chauncey's claim of error related to the special prosecutor's conduct and advice. Despite the potential for confusion regarding the different versions of § 28-707, we do not believe that such potential creates grave doubt as to whether the grand jury agreed on the offense on which it decided to indict Chauncey. The indictment clearly charged Chauncey with "knowingly or intentionally" committing the enumerated acts rather than committing such acts negligently or recklessly. The language in the indictment charging acts done "knowingly or intentionally" make clear that the grand jury agreed on and referred to "**Penalty Sec. 28-707(6)**" of the 2008 version. Furthermore, because the indictment did not charge the crime as being committed "negligently" or "recklessly," advice regarding the definition of those terms was not likely to have affected the jury's decision to charge the offense as having been committed "knowingly or intentionally." Chauncey's challenge regarding the proper statute before the grand jury does not, in our view, indicate that such occurrence substantially influenced the grand jury's decisions, nor was Chauncey prejudiced thereby.

In sum, we conclude that the court did not err when it overruled the motion to quash the indictment.

### 3. DISTRICT COURT DID NOT ERR WHEN IT OVERRULED MOTION IN LIMINE TO PROHIBIT EVIDENCE REGARDING DNA TESTING OF SPERM FRACTION

Chauncey next claims that the district court erred when it overruled his motion in limine in which he sought to prohibit the State from presenting evidence regarding DNA testing of the sperm fraction found on Juliette's shirt. He argues that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice, because the reference to sperm might cause the jury to think this case involved the sexual assault of a child. We reject this assignment of error.

As noted earlier in this opinion, the district court reserved ruling on Chauncey's pretrial motion in limine regarding DNA evidence related to the sperm fraction until the trial. Before the State's DNA expert testified at trial, the court heard arguments by the parties and allowed Chauncey to voir dire the expert. Thereafter, the court found the DNA evidence relevant, and as we read the court's ruling, its probative value outweighed the danger of prejudice. The court overruled the motion in limine. The court found that the evidence was relevant in part because it went to the question of "[e]xactly when" the sample was deposited onto Juliette's shirt. The court stated that because Chauncey was not being charged with sexual assault of a child, the court trusted that the jury would focus on the elements of the crime being charged and make its judgment based on the evidence rather than on speculation or conjecture.

Chauncey contends the evidence should not have been allowed, based on lack of probative value and the potential for unfair prejudice. He argues the evidence lacked probative value because the DNA expert could not establish when the sample was transferred to the shirt, and he argues unfair prejudice because the mention of a sperm sample would inappropriately cause the jurors to think of sexual assault.

[8-11] Evidence is relevant if it tends in any degree to alter the probability of a material fact. *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016). Under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 2016), relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *State v. Grant, supra*. Most, if not all, evidence offered by a party is calculated to be prejudicial to the opposing party. *State v. Oldson*, 293 Neb. 718, 884 N.W.2d 10 (2016). Unfair prejudice means an undue tendency to suggest a decision based on an improper basis. *Id*. Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis. *Id*.

Chauncey contends that the district court "acquiesced the 403 balancing role to the jury." Brief for appellant at 46. We disagree. Chauncey's argument misperceives the district court's reasoning, particularly the court's statement that it would trust the jury to focus on the crime being charged rather than speculating about sexual assault. We read the court's comment not as having acquiesced the balancing to the jury, but, instead, as reflecting that it had balanced probative value against the danger of unfair prejudice before determining that the evidence could be presented to the jury, which would be expected to focus on the charged crime.

We further note in regard to both probative value and unfair prejudice that the court's ruling on the motion in limine came after Cardwell had testified about Chauncey's jailhouse statements, including how Chauncey's sperm may have gotten onto Juliette's clothing. That testimony increased the relevance of the DNA evidence as to both the identity of the perpetrator and the timing of the crime. Cardwell's testimony preceding admission of the DNA evidence likely lessened the danger of unfair prejudice because the jurors had an explanation for how the sperm got onto Juliette's clothing. The court

did not abuse its discretion when it overruled the motion in limine, and we reject this assignment of error.

### 4. MOTIONS FOR MISTRIAL—DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT OVERRULED MOTIONS FOR MISTRIAL

Chauncey finally claims that the district court erred when it overruled his motion for mistrial after the prosecutor mentioned during opening statements the testing of sperm found on Juliette's clothing and his motion for mistrial when the prosecutor questioned Cardwell regarding Chauncey's statements explaining how his sperm might have gotten on Juliette's clothing. The bases for Chauncey's argument are that the State violated the court's pretrial rulings and that the DNA evidence was wrongly admitted. We reject Chauncey's argument that the district court erred when it overruled his motions for mistrial.

Prior to trial, the district court reserved ruling on Chauncey's motion in limine with regard to the sperm fraction. At that time, the court ordered the State to notify the court and the defense in advance of offering such evidence in order to allow Chauncey to object and the court to rule on the admissibility of the evidence. As noted in the immediately preceding section of this opinion, the court eventually overruled the motion in limine prior to the testimony of the State's DNA expert. However, as noted, on two occasions during the trial prior to that ruling, Chauncey had objected and moved for a mistrial.

[12] A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial. *State v. Mitchell*, 294 Neb. 832, 884 N.W.2d 730 (2016). The defendant must prove that the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice. *Id*.

### (a) Opening Statement
### Regarding Sperm

The prosecutor stated during opening statements that the clothing Juliette was wearing was sent to the state laboratory for testing and that "the lab found on the little undershirt some sperm and [it] tested that sperm." Chauncey objected at this point, and the court instructed the jury to disregard the prosecutor's comments about sperm on the shirt. At the conclusion of opening statements, Chauncey moved for a mistrial and argued that the State had violated the court's order when it mentioned testing the sperm. The court overruled Chauncey's motion for mistrial, noting in part that the jury had been advised to disregard the specific comments regarding sperm and that the jury had generally been instructed that the comments of counsel were not evidence.

[13] With regard to the prosecutor's statement during opening statements, the court advised the jury to disregard the specific comments regarding sperm. Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material. *Id*. We believe the court's admonishment was sufficient and the overruling of Chauncey's motion for mistrial was not error.

### (b) Cardwell's Testimony
### Regarding Sperm

The court overruled another motion for mistrial when the State questioned Cardwell regarding jailhouse statements Chauncey had made to Cardwell explaining how Chauncey's sperm might have gotten on Juliette's clothing. The prosecutor asked Cardwell, "[D]o you recall in any conversation where the issue of semen or sperm was mentioned?" Chauncey objected on the basis that the court had not yet ruled on his motion in limine. The court excused the jury in order to hear argument from the parties. In addition to objecting to the questioning, Chauncey moved for a mistrial. After argument, the

court overruled Chauncey's objection and his motion for mistrial. The State continued questioning Cardwell, who testified that Chauncey said that his sperm would have been on Juliette because he had been having intercourse with Charyse immediately before he picked up Juliette.

With regard to the questioning of Cardwell, we note that when the court overruled the motion for mistrial, it also determined that Cardwell's testimony was admissible in order to establish foundation for the DNA testing evidence. The court ultimately determined that the evidence regarding DNA testing of the sperm fraction was admissible, and in the previous section of this opinion, we concluded that the district court did not abuse its discretion in that ruling. Because the DNA evidence was ultimately determined admissible, Chauncey has not shown that the State's questioning of Cardwell regarding the sperm prejudiced him. The overruling of Chauncey's motion for mistrial was not error.

## VI. CONCLUSION

Having rejected Chauncey's assignments of error, we affirm his conviction and sentence.

AFFIRMED.