IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BARRERA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

NORBERTO RETANA BARRERA, APPELLANT.

Filed October 6, 2020.    No. A-19-978.

Appeal from the District Court for Lancaster County: ROBERT R. OTTE, Judge. Affirmed.

Thomas Campbell, of TLN Law, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Siobhan E. Duffy for appellee.

MOORE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Following a jury trial in the district court for Lancaster County, Norberto Retana Barrera was convicted of first degree sexual assault, third degree sexual assault of a child, and child abuse. On appeal to this court, Barrera asserts that the district court erred in allowing prosecutorial and juror misconduct, permitting the prosecution to question Barrera's wife concerning Barrera's prior sexual frequency, and overruling Barrera's motion for a new trial. We affirm.

## II. BACKGROUND

Barrera was charged with first degree sexual assault, a Class II felony; third degree sexual assault of a child, a Class IIIA felony; and child abuse, a Class IIIA felony. The acts giving rise to the charges occurred between June 2016 and October 2018. The named victim in each count was Barrera's stepdaughter, B.P., born in 2004.

Barrera met and began dating A.R., B.P.'s mother, and eventually moved in with A.R. and her daughters in 2014. Barrera and A.R. married in 2017 and continued to live together. When B.P. was 11 years old, Barrera began a pattern of touching B.P.'s breasts and vagina on numerous occasions. This pattern escalated over time to include Barrera having B.P. touch his penis, placing his penis in B.P.'s mouth, and penetrating B.P.'s vagina with his fingers and penis. B.P. disclosed Barrera's acts to her mother several times, but her mother did not believe anything inappropriate was happening. Barrera continued this pattern of assaulting B.P. until 2018 when B.P., then 14 years old, told her school counselor that Barrera was assaulting her. Criminal charges and a jury trial followed.

A jury found Barrera guilty of all three charges. Barrera filed a motion for new trial asserting the errors he now assigns on appeal, which the district court overruled. The court sentenced Barrera to consecutive sentences of 20 to 35 years' imprisonment for first degree sexual assault, 1 to 3 years' imprisonment for third degree sexual assault, and 1 to 3 years' imprisonment for child abuse. Barrera timely filed this appeal.

Additional facts and circumstances relevant to the assigned errors will be discussed below.

## III. ASSIGNMENTS OF ERROR

Barrera claims the district court erred by (1) allowing prosecutorial misconduct in the prosecution's closing statement that prejudiced his right to a fair trial, (2) allowing juror misconduct that prejudiced his right to a fair trial where one juror communicated with another concerning the trial, (3) overruling Barrera's objection to the prosecution's questioning of Barrera's sexual frequency on cross-examination of Barrera's wife, and (4) overruling Barrera's motion for new trial.

## IV. STANDARD OF REVIEW

Whether prosecutorial misconduct is prejudicial depends largely on the context of the trial as a whole. *State v. Gonzales*, 294 Neb. 627, 884 N.W.2d 102 (2016). An appellate court reviews a motion for new trial on the basis of prosecutorial misconduct for an abuse of discretion of the trial court. *State v. McSwine*, 292 Neb. 565, 873 N.W.2d 405 (2016).

The retention or rejection of a juror is a matter of discretion for the trial court. *State v. Huff*, 298 Neb. 522, 905 N.W.2d 59 (2017). This rule applies both to the issue of whether a venireperson should be removed for cause and to the situation involving the retention of a juror after the commencement of trial. *Id.* Thus, the standard of review in a case involving discharge of a juror is whether the trial court abused its discretion. *Id.*

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Martinez*, 306 Neb. 516, 946 N.W.2d 445 (2020). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *State v. Martinez, supra.*

In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017).

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Martinez, supra*.

## V. ANALYSIS

### 1. PROSECUTORIAL MISCONDUCT

Barrera asserts the trial court erred when it allowed the State to make prejudicial references to the existence of incriminating DNA evidence during closing statements when no such evidence was offered, and then later failed to provide a corrective jury instruction to address the prejudicial statements.

### (a) Additional Facts

During the course of the trial, the State offered into evidence a recording of one of several phone calls between Barrera and A.R. Accompanying this recording was a transcript of the phone call translated into English. The pertinent part of the transcript in question reads as follows:

Barrera: What if they find proof of the other thing?

A.R.: We don't know.

Barrera: They're going to screw me over. You should have thrown all of clothes to the, what do you call it, the trash. I don't know what . . . because you would put her clothes in the washer machine together with mine, and I would sometimes touch that clothes. What if they fuck me over that too?

A.R.: Oh, that's right.

Barrera: Yes. You know that I would tell you that you were putting those things in there with my clothes.

A.R.: Uhm. That's true.

Barrera: Like an underwear (inaudible) they're not new.

A.R.: Yeah.

Barrera: Grab it and throw it in the trash can somewhere else.

The State referenced this exchange between Barrera and his wife during closing statements, and said to the jury:

And why is he wanting to get rid of the clothing? I'd submit to you, ladies and gentlemen, because he knows that there's probably some DNA or semen or something like that on there. Because he tells her, you know, I would tell you that you're putting those things in with my clothes, like, underwear that are not new. And he tells her, just grab it and throw it in the trash.

And when I asked him about that on the stand, ladies and gentlemen, his response was, well, you know, I was watching the show and it was about people in jail and how they needed to get rid of their items and just give them away. But the translation, the words, throw them in the trash, get rid of them, doesn't show the intent that he testified to from the stand.

- 3 -

Are these the words of an innocent man, ladies and gentlemen? Fourteen days after disclosure he's already talking about having conjugal visits after being sentenced and telling his wife how she should get rid of evidence.

After the State concluded, Barrera requested a side bar with the district court and argued that the State's claim that "there's probably some DNA or semen or something like that on [the clothes]" was prejudicial and amounted to misconduct. The State responded that "it's a reasonable inference that [Barrera was] concerned there was some type of evidence or DNA [on the clothing] . . . from evidence that has been presented." No limiting instruction was requested. The court overruled Barrera's objection after the jury began deliberations.

Following the jury's guilty verdicts, Barrera filed a motion for a new trial alleging, among other grounds, the State's remarks concerning DNA in its closing statement constituted prosecutorial misconduct. The district court overruled this motion in full, finding the statements to not be prosecutorial misconduct or prejudicial.

(b) Analysis

Prosecutorial misconduct encompasses conduct that violates legal or ethical standards for various contexts because the conduct will or may undermine a defendant's right to a fair trial. *State v. Price*, 306 Neb. 38, 944 N.W.2d 279 (2020). Prosecutors are charged with the duty to conduct criminal trials in such a manner that the accused may have a fair and impartial trial, and prosecutors are not to inflame the prejudices or excite the passions of the jury against the accused. *Id*. In assessing allegations of prosecutorial misconduct in closing arguments, a court first determines whether the prosecutor's remarks were improper. *Id.* It is then necessary to determine the extent to which the improper remarks had a prejudicial effect on the defendant's rights to a fair trial. *Id.*

A prosecutor's conduct that does not mislead or unduly influence the jury does not constitute misconduct. *Id.* A prosecutor must base his or her argument on the evidence introduced at trial rather than on matters not in evidence. *State v. Johnson*, 298 Neb. 491, 904 N.W.2d 714 (2017). However, a prosecutor is entitled to draw inferences from the evidence in presenting his or her case, and such inferences generally do not amount to prosecutorial misconduct. See *State v. Munoz*, 303 Neb. 69, 927 N.W.2d 25 (2019).

Barrera argues on appeal that the State engaged in prosecutorial misconduct when, referencing the call between Barrera and A.R. during closing statements, the State claimed that "there's probably some DNA or semen or something like that" on some article of clothing. Barrera contends that "the State presented no DNA evidence incriminating [Barrera]" and "had no DNA evidence implicating [Barrera] in anyway [sic]." Brief for appellant at 8. He further claims "[t]he State knew this statement was either (1), not true and factually inaccurate, . . . or (2) that it had no evidence to support and [sic] allegation of DNA of [Barrera], or (3), both . . . ." *Id.* at 9. Barrera argues the district court abused its discretion when it allowed the jury "to hear these untrue prejudicial statements without a proper jury instruction," and this abuse denied Barrera a fair trial. *Id.* at 9-10.

The State argues in response that the statement "there's probably some DNA or semen or something like that" was a reasonable inference derived from evidence presented at trial. The State identifies the phone call transcript as evidence giving rise to its inference during closing

statements. Specifically, the State points to Barrera asking A.R., "What if they found proof of the other thing?" and then discussing with A.R. "how [she] should get rid of the clothes, how his wife used to wash his clothes with the victim's, and that she should throw the clothes in the trash" as the evidence supporting its inference that there was "probably" DNA or other physical evidence on the clothing described by Barrera. Brief for appellee at 9.

We conclude the statement at issue in the State's closing statement to be a reasonable inference based upon the evidence offered at trial. In the phone call between Barrera and A.R., Barrera indicated his concern that proof of "the other thing" would be found on some article of clothing and instructed A.R. to "[g]rab it and throw it in the trash can somewhere else." The State inferred from this exchange that there probably was DNA or some other physical evidence on this article of clothing, as that would give cause for Barrera to want to throw it away. This inference was reasonable in light of the record before us.

Even if we were to conclude the statement was improper, the record does not support Barrera's claim that he suffered prejudice as a result of the statement. Barrera rebutted the State's remarks in his own closing statement by pointing out to the jury that "[t]he facts are that before you now there's no physical evidence of any kind. That's a fact." Additionally, the district court instructed the jury prior to closing statements that "[t]hese final arguments are not to be considered by you as evidence in this case or the instructions of applicable law" and "if [the attorneys'] recollection of the evidence differs from your recollection, you must follow your own recollection." In light of this record, even if the State's statement that "there's probably some DNA, or semen, or something like that" was misconduct, this statement did not prejudice Barrera.

We conclude the district court did not abuse its discretion in allowing the State to suggest there was probably some DNA or other physical evidence during its closing statement, nor did it abuse its discretion by not providing a limiting jury instruction when such an instruction was not requested.

### 2. Juror Misconduct

Barrera asserts on appeal that the trial court erred by retaining one of two jurors who conversed about the trial and not granting a mistrial in light of that misconduct.

### (a) Additional Facts

During the trial's early phase, a juror (Juror C.) had become anxious, and attempted to contact the district court's bailiff to voice her anxiety after the first day. Juror C.'s message was unintentionally sent to a different bailiff, who subsequently contacted the proper bailiff who then brought Juror C.'s concerns to the court's attention. The court questioned Juror C. outside the presence of the jury, and Juror C. disclosed that the subject matter of the trial made her "sick to [her] stomach just sitting here." She did not believe she could sit through the evidence or make a reasonable determination on the case, as she felt she "side[d] with [B.P.] unintentionally" prior to hearing the testimony of any witnesses. Upon questioning, Juror C. informed the court that she had spoken with one other juror (Juror N.) about her anxiety that same night she tried to call the bailiff. She further affirmed that she had not spoken to any other juror about her feelings and no one else had seen her be visibly upset.

The district court then questioned Juror N. about the conversation she had with Juror C. Juror N. told the court:

> [Juror C.] said last night she was having a hard time, she was crying the whole night, she had to go to sleep early. She called [the bailiff], but then the number was wrong and she was, like, trying to leave her a voicemail. And she was just not feeling well about it. She said she had anxiety about the trial.

Juror N. additionally told the court that she felt "overwhelmed," and the trial was "something [she was not] prepared for." Juror N. confirmed that she had not told any other member of the jury about the conversation with Juror C. and the conversation with Juror C. would not affect her ability to be fair and impartial during the trial. Barrera then asked Juror N. if she had "an opinion about how [she] should rule," to which she answered that she had not made a "full decision," but was "leaning towards a certain way." Barrera further asked Juror N. if she would "wait till the evidence is done or wait till the judge says now you can think about it and make a decision," and Juror N. affirmed that she would.

The district court discharged Juror C. and chose to continue the trial with Juror N. Barrera did not ask the court to remove Juror N. and made no objection or motion concerning her retention at that time. Barrera later raised this issue for the first time in his motion for new trial, which the district court overruled.

### (b) Analysis

The retention or rejection of a juror is a matter of discretion for the trial court. *State v. Huff*, 298 Neb. 522, 905 N.W.2d 59 (2017). A criminal defendant claiming jury misconduct bears the burden of proving, by a preponderance of the evidence, (1) the existence of jury misconduct and (2) that such misconduct was prejudicial to the extent that the defendant was denied a fair trial. *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017). Where the jury misconduct in a criminal case involves juror behavior only, the burden to establish prejudice falls on the party claiming the misconduct. *State v. Huff, supra.*

Barrera contends on appeal that the conversation between Juror C. and Juror N. was juror misconduct and the district court's decision to retain Juror N. denied Barrera's right to a fair trial. Barrera argues that "[i]t is unclear whether [Juror C. and Juror N.] can be trusted or not" because of their conversation and that neither juror informed the court about the conversation prior to being questioned. Brief for appellant at 11. He further asserts that Juror N.'s statements that she was "overwhelmed" and the trial was "something [she was not] prepared for" indicated that she could not be fair and impartial. *Id.* at 12.

The burden is on Barrera to establish by a preponderance of the evidence that juror misconduct occurred and that such misconduct was prejudicial so as to deprive him of his right to a fair trial. See *State v. Hairston, supra*. Barrera first only identifies a possibility that Juror C. and Juror N. were untrustworthy. He further construes Juror N.'s sentiments of being overwhelmed and unprepared for a trial with difficult subject matter as evidence of her incapacity to be fair and impartial.

Even assuming the conversation between Juror C. and Juror N. amounted to misconduct, Barrera's allegations are not sufficient to prove prejudice as they are based only upon speculation.

The district court discharged Juror C. following the determination that her retention was not proper. In addition, Juror N. confirmed, to the satisfaction of the district court and Barrera, that she could be fair and impartial despite the conversation with Juror C. Barrera made no objection or motion against Juror N.'s retention until the jury returned a guilty verdict. Other than an unfavorable verdict, Barrera points only towards the uncertainty of whether Juror N. acted in accord with her affirmations that she would be fair and impartial. On the record before us, Barrera has not carried his burden to prove by a preponderance of the evidence that any juror misconduct prejudiced his right to a fair trial. See *State v. Hairston, supra.*

For these reasons, we find that the district court did not abuse its discretion in discharging Juror C. and retaining Juror N.

### 3. QUESTIONS CONCERNING SEXUAL FREQUENCY

Barrera asserts on appeal that the trial court erred in allowing the State to ask questions concerning Barrera's past sexual history and frequency, arguing that such past sexual frequency is a prior bad act and unfairly prejudicial.

### (a) Additional Facts

In the course of presenting his case, Barrera called his wife, A.R., to testify. A.R. stated on direct examination that she had not seen "anything out of the ordinary" occurring between Barrera and B.P. at any of the places they had lived from 2014 to 2018. However, during cross-examination, A.R. confirmed that B.P. repeatedly told A.R. that Barrera had touched or tried to touch her breasts or private area on multiple occasions. Toward the end of the 4-year span, A.R. had been pregnant with her youngest daughter and was on bed rest. The State asked A.R. if, during her pregnancy, she "was not having any type of sexual contact" with Barrera.

Barrera objected to this question on the basis of relevance and unfair prejudice, arguing that "it's prejudicial to say [Barrera] wasn't having sex with his wife so there must be something else." The State responded at side bar that the question concerning Barrera and A.R.'s sexual frequency related to B.P.'s disclosures to A.R. that Barrera was touching her and A.R. telling Barrera that "[i]f [she was] not interested, [Barrera] need[ed] to go out of the house and not do it in [her] house with [B.P.]" The district court overruled Barrera's objection, stating, "[A] lot of these [questions] have a prejudicial effect. I'm not sure that that's a problem in this particular instance."

Resuming cross-examination, A.R. confirmed that she had not been having sexual contact with Barrera during her pregnancy while B.P. was disclosing that Barrera was touching her. A.R. further affirmed that she told Barrera on multiple occasions, including after an instance where B.P. told A.R. that Barrera was touching her inappropriately, that "if he was going to do something or if [she was] not interested, . . . he needed to go outside the house and not mess with [her] daughter."

After the jury returned its guilty verdicts, Barrera moved for a new trial, arguing again that the State's questioning of Barrera's past sexual frequency was irrelevant and prejudicial. At the hearing for the motion, Barrera characterized, for the first time, his past sexual frequency with A.R. as a prior bad act under rule 404 of the Nebraska Evidence Rules, arguing that "[s]exual activity is often seen as a moral issue. And immorality throughout the history of this country has

been a bad act. Someone should not be, quote, unquote immoral. So the State was getting at he's not a moral person, he's not having enough sex." The district court overruled the motion.

(b) Analysis

*(i) Prior Bad Act*

We first note that during trial, Barrera objected to the State's questions concerning his sexual frequency with A.R. solely on the grounds of relevance and prejudice. It was not until the hearing on his motion for a new trial that Barrera argued the State's questions should be excluded as propensity evidence by prior bad acts under Neb. Rev. Stat. § 27-404 (Reissue 2016). As noted above, when asked by the district court what constituted a bad act, Barrera's response was that "[s]exual activity is often seen as a moral issue. And immorality throughout the history of this country has been a bad act." The State responded that the question about Barrera's sexual history with his wife was relevant for impeachment purposes because of Barrera's testimony suggesting his healthy sexual relationship with his wife negated him having sexual activity with someone else. And as further discussed below, the State argues now that this testimony was relevant for impeachment purposes related to A.R. The district court, in overruling Barrera's motion for new trial, determined that the prosecution could "discuss . . . or ask questions about [Barrera's sexual frequency] in terms of credibility." Upon our examination of the record, we find that the district court did not abuse its discretion in rejecting Barrera's attempt to claim that this line of questioning should have been excluded under § 27-404.

*(ii) Relevance and Prejudice*

Evidence is relevant if it tends in any degree to alter the probability of a material fact. *State v. Chauncey*, 295 Neb. 453, 890 N.W.2d 453 (2017). Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Id.* Most evidence offered by a party is calculated to be prejudicial to the opposing party. *Id.* Unfair prejudice means an undue tendency to suggest a decision based on an improper basis. *Id.* Unfair prejudice speaks to the capacity of some concededly relevant evidence to lure the fact finder into declaring guilt on a ground different from proof specific to the offense charged, commonly on an emotional basis. *Id.*

Barrera contends on appeal that his "sexual patterns, preferences, and past sexual frequency is . . . seen as 'immoral' and highly prejudicial without any exception that outweighs any probative value." Brief for appellant at 12. He further argues that the State first brought up the subject of Barrera's sexual frequency without either Barrera or A.R. first testifying about their sexual frequency. *Id.* at 13.

The State argues in response that this question was relevant and not unfairly prejudicial. The State claims it "was impeaching A.R.'s prior testimony that she had never seen anything suspicious and . . . B.P. had never told [A.R.] anything was happening between [B.P.] and Barrera." Brief for appellee at 16-17. The State asserts the question concerning Barrera and A.R.'s sexual frequency was one part in "showing that during the time period A.R. was on bed rest, . . . A.R. felt [B.P.'s reporting that Barrera was touching her] was serious enough to tell Barrera that if he were [sic] going to do something that he needed to go outside the house and not do it with B.P." *Id.* at 17.

We agree that the State's questions were proper impeachment of A.R.'s testimony at trial. These questions went towards whether B.P. made disclosures concerning Barrera's conduct to A.R. and A.R.'s knowledge of the circumstances, and the questions were probative of these facts. Upon examination of the record and balancing the probative value with the risk of unfair prejudice, we conclude that while the State's line of questioning was prejudicial to Barrera, the probative value of the questions was not substantially outweighed by the risk of unfair prejudice. The district court therefore did not abuse its discretion in allowing these questions.

Barrera also contends on appeal that "[i]t was plain error for the trial court to allow these prejudicial questions before the jury." Brief for appellant at 13. Plain error may be found on appeal when an error unasserted or uncomplained of at trial is plainly evident from the record, affects a litigant's substantial right, and, if uncorrected, would result in damage to the integrity, reputation, or fairness of the judicial process. *State v. Guzman*, 305 Neb. 376, 940 N.W.2d 552 (2020). We have examined the record on the grounds described above, and we conclude there was no plain error.

### 4. MOTION FOR NEW TRIAL

Barrera argues on appeal that the district court erred in overruling his motion for new trial. He asserts the errors described above as grounds for new trial. In a criminal case, a motion for new trial is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Hairston*, 298 Neb. 251, 904 N.W.2d 1 (2017). As described above, the district court did not err on any of the grounds asserted and therefore did not abuse its discretion in overruling Barrera's motion for new trial.

### VI. CONCLUSION

For the reasons set forth above, we affirm Barrera's convictions and sentences.

AFFIRMED.