IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. SWEARINGEN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

ROBERT W. SWEARINGEN, APPELLANT.

Filed June 16, 2020.    No. A-19-1125.

Appeal from the District Court for York County: JAMES C. STECKER, Judge. Affirmed.

Aaron B. Bruns, of Svehla Law Offices, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Austin N. Relph for appellee.

MOORE, Chief Judge, and RIEDMANN and ARTERBURN, Judges.

MOORE, Chief Judge.

## INTRODUCTION

Appellant, Robert W. Swearingen, appeals from his plea-based conviction of attempted first degree sexual assault. On appeal, Swearingen claims the district court for York County erred in denying his motion to disqualify the county attorney's office for alleged witness tampering. Finding no error, we affirm.

## BACKGROUND

Swearingen was initially charged with first degree sexual assault of a child under Neb. Rev. Stat. § 28-319.01 (Reissue 2016), a Class IB felony. According to the charge, it was alleged that on November 27, 2017, Swearingen subjected a minor to sexual penetration. Following a preliminary hearing in York County Court, the case was bound over to district court.

Swearingen filed a motion to suppress his statements made to law enforcement on the grounds that they were not voluntarily given and that they were obtained in violation of *Miranda*.

- 1 -

At the hearing on the motion, Sergeant Bruce Winn of the York County sheriff's office testified about his investigation of a call received on November 27, 2019, at approximately 3 a.m. The reporting party, a female caller, indicated that her boyfriend had just tried to have sex with her 13-year-old daughter and that he had left in his vehicle headed toward York. Winn proceeded to the highway to search for the vehicle, however, he was updated by the dispatcher that the subject had returned to the house and had kicked in a door and there was a lot of screaming going on in the background. Winn then went to the house of the reporting party, and upon arriving, he made contact with two people; the reporting party and Swearingen. Shortly after Winn's arrival, another officer arrived at the scene, Deputy Hildebrand. Winn asked the reporting party and the victim to stay inside the house and directed Hildebrand to speak with them. Winn took Swearingen outside and spoke to him.

Winn testified that he asked for the suspect's name and date of birth in order to identify him, which Swearingen provided. Swearingen then stated that "he just wanted to get out of there, wanted to go get a bus ticket and go to Colorado." Winn explained to Swearingen why they were there, to which Swearingen responded "that it's not what it seems." Winn responded by asking Swearingen why he was then trying to leave so quickly, and Swearingen indicated that he just wanted to get out of there and "avoid all this." Winn then asked Swearingen "so what's going on tonight?" Swearingen made the statement that he was accused of having sex with the 13-year-old victim, and the mother, being the reporting party, woke up and caught them. Winn testified that these statements by Swearingen were voluntary.

Winn ran Swearingen's name and date of birth through a warrants check, and dispatch responded that he had a warrant out of Colorado although it had not yet been confirmed. Swearingen volunteered information about his criminal history that included assault on an officer, escape, and possession of a controlled substance. Based on the warrant information and Swearingen's history, Winn detained him. Winn explained to Swearingen that he was not under arrest, but he needed to confirm the warrant information. Winn was placed in the backseat of the patrol car, without handcuffs. After getting confirmation on the warrant, Winn told Swearingen that they just needed "to figure out what's going on here and we'll take it from there." At this point, Swearingen started talking about "his side of what had taken place." According to Winn, Swearingen told him that they had gone into town to a pizza place and then came home. After they all went to sleep in the same room, Swearingen said he woke up and the victim was giving him oral sex. Swearingen said he felt "kind of awkward" so he got up and went out and had a cigarette. When he returned to bed, the victim requested to be able to snuggle with him and he agreed. During that time, Swearingen indicated that she made several attempts to try to move his hand down to her vagina, he would move it away, and she would put his hand back there. Swearingen again got up and went and had a cigarette, which pattern was repeated about four times. Swearingen claimed that the final time the victim tried to perform oral sex on him, the mother woke up and "caught this going on." Winn testified that during this time, he did not ask Swearingen any questions and that the entire exchange lasted about 10 to 15 minutes.

Winn agreed that he did not read Swearingen his *Miranda* rights before placing him in the patrol car because he was not conducting a formal interview or interrogation of him and he was not under arrest. Winn testified that Swearingen's statements in the patrol car were voluntarily

made. Hildebrand advised Winn that the victim confirmed that oral sex had taken place, but claimed that Swearingen was the instigator. Winn then placed Swearingen under arrest.

Swearingen also testified at the suppression hearing. Swearingen indicated that when Winn showed up at the house, Swearingen told Winn "you probably want to speak with [me]." Swearingen then voluntarily went outside with Winn. Winn asked him "why did you run" and "what's going on?" Swearingen responded that he ran because "he didn't want to deal with this" and he "wasn't ready to go to jail" because he had a parole warrant out of Colorado for escape. Winn then asked Swearingen for his full name and date of birth, which he gave. Swearingen testified that Winn walked away to speak with Hildebrand for a second and then came back and told Swearingen that he was going to put him in the back of the patrol car for now. Winn sat in the driver's seat and Winn then asked him "what's going on around here" and Swearingen told him. Swearingen indicated that the only question Winn asked him was "the one about the whole situation that was going on that night."

On January 29, 2019, the district court entered an order overruling the motion to suppress. After recounting the evidence, the court first found that Swearingen was not in custody for purposes of *Miranda* when he made his initial statements to Winn while they were standing outside. The court found that the initial questions of Swearingen relating to his name and date of birth and outstanding warrants were not interrogation as contemplated by *Miranda*. The court further found that Winn's question "What is going on?" was asked when Swearingen was not in custody, noting that his freedom of movement was not restricted, he was not in handcuffs, and no mention of arrest had been made. The court concluded that Swearingen's response, that he was accused of having sex with his girlfriend's 13-year-old daughter, was therefore not the product of custodial interrogation. The district court further concluded that after Swearingen was placed in the patrol car and advised of the outstanding warrant, although he was then in custody since his freedom of movement was restricted, Winn's statement that "we are just going to have to figure out what's going on here and we'll take it from there" was not a question. The court found that Swearingen's statements, both before and after being detained in the patrol car, were voluntarily made and not the result of interrogation by law enforcement.

Thereafter, a written plea agreement was entered on March 3, 2019, in which Swearingen agreed to plead guilty or no contest to an amended charge of attempted first degree sexual assault, a Class IIA felony, and the State agreed to amend the information accordingly as well as dismiss another charge pending in York County District Court. No agreement as to sentencing was included. A plea hearing was held the same day. Although the bill of exceptions provided on appeal does not contain those proceedings, the order entered that day shows that Swearingen was advised of his rights and of the penalties and consequences of his plea, that he understood those matters, that a factual basis was given, that Swearingen pled no contest, and that the court accepted the plea and found him guilty of the amended charge.

On May 3, 2019, Swearingen filed a motion to disqualify the York County Attorney's office from any further participation in the case. The motion alleged that in reviewing the presentence investigation (PSI) created for sentencing, defense counsel discovered notes related to the suppression hearing which appear to be instructions from the county attorney's office to the officer that testified at the suppression hearing. Swearingen alleged that the instructions called into

question the preparation of the witness, the validity of the witness testimony, and the impartiality of the county attorney's office. Swearingen sought the appointment of a special prosecutor.

At the hearing on the motion to disqualify, Swearingen and the State stipulated to the admission of three exhibits; the instructions noted above, the transcript from the preliminary hearing held in county court prior to the case being bound over to district court, and the transcript from the hearing on the motion to suppress. In addition, Winn and the York County Attorney, Christopher Johnson, testified.

The instructions document, Exhibit 2, states:

Their goal is to get you to admit that Swearingen was arrested/detained/interrogated without you reading him Miranda rights.

Our goal is to get you to say you may have detained him, but that his statements were voluntary in nature and not a response to your interrogation or questioning.

The standard is this: Would a reasonable person have believed that they were not free to go at the time the interrogation/questioning happened.

There's no question that you detained him based on the warrant. Your report says that you detained him on that. I'm arguing that he may have been detained and not free to go, but that his statements were voluntary and not the result of your interrogation or questions.

If he can get you to admit that he was (1) not free to go and (2) that you continued to question him after he was not free to go, they win and all of his statements can get thrown out.

It's our job to show that Miranda was not required because he just kept talking voluntarily and not as a result of your questioning.

Winn testified about the general steps he takes to prepare to testify in court; which include reviewing the case file and his report, and touching base with the county attorney's office. Winn testified that he followed this general procedure before testifying at the preliminary hearing and the suppression hearing in this case. In both instances, Winn met briefly with the county attorney and was given a list of questions that they were going to ask. Winn did not recall being given the instructions document prior to the suppression hearing. Winn was advised by the county attorney to go over his case file and report. Winn denied that anyone attempted to influence him to testify in any certain way. Winn indicated that he testified truthfully.

Johnson testified that he prepared the instructions document and it was likely shown to Winn in preparation for the suppression hearing, although he could not recall whether a copy was given to Winn. Johnson confirmed that Winn would not have seen the document prior to his testimony at the preliminary hearing.

On July 9, 2019, the district court entered an order finding that Swearingen had not met his burden to show that the county attorney's office should be disqualified. Swearingen's appeal from this order was dismissed as it was not a final, appealable order.

A sentencing hearing was held on October 28, 2019, at which the PSI was considered, along with statements of counsel, and allocution by Swearingen. The district court imposed a sentence of 14 to 18 years' imprisonment, with credit given for 701 days served. Swearingen again appeals.

ASSIGNMENTS OF ERROR

Swearingen assigns that it was error for the district court to conclude that he was not prejudiced by witness tampering.

STANDARD OF REVIEW

The decision to appoint a special prosecutor is addressed to the discretion of the trial court, and absent an abuse of discretion, such ruling will not be disturbed on appeal. *State v. Chauncey*, 295 Neb. 453, 890 N.W.2d 453 (2017).

An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *State v. Montoya*, 305 Neb. 581, 941 N.W.2d 474 (2020).

ANALYSIS

Swearingen assigns that the district court erred in concluding that he was not prejudiced by witness tampering. As subparts to this assigned error, Swearingen asks this court to consider (1) whether the county attorney's coaching of Winn amounted to improper witness tampering, (2) whether the county attorney's witness tampering altered the outcome of the proceedings, (3) whether granting his motion to disqualify the county attorney's office would have altered the outcome of the proceeding, and (4) whether his sentence was excessive.

*Witness Tampering.*

Swearingen argues that the alleged "coaching" of Winn by the county attorney amounted to improper witness tampering. Swearingen focuses on the instructions document he claims was used by the county attorney's office to prepare Winn for his testimony in this case. Swearingen asserts that Winn was instructed to testify that Swearingen's statements were voluntary in nature and not in response to Winn's interrogation, and that the county attorney's directions stated that it was Winn's job to testify a specific way, regardless of whether the testimony he was instructed to give was truthful or not. Swearingen claims he was prejudiced by this witness tampering in that (1) improperly obtained incriminating statements were allowed into evidence, (2) he was deprived of his right to confront Winn at the suppression hearing, and (3) he entered into a plea deal that he would not have taken but for his motion to suppress and motion to disqualify being improperly denied.

We first note that Winn entered into the plea agreement before he filed the motion to disqualify, not after. Thus, he could not have been induced to enter into the plea agreement as a result of the denial of the motion to disqualify.

With regard to the argument that the alleged witness tampering affected the hearing on the motion to suppress, the evidence adduced at the hearing on the motion to disqualify does not support this argument. The evidence indicates that the county attorney and Winn did meet briefly prior to the suppression hearing. The instructions document was likely shown to Winn by the county attorney at this meeting, although Winn did not remember seeing a copy of it. However, the instructions document does not instruct Winn to testify a particular way, regardless of the truth. Winn was advised by the county attorney to review his file and report prior to the suppression hearing, which he did. Winn denied being influenced by anyone in the giving of his testimony and

testified that he did not change his testimony in any way after preparing for the hearing. In reviewing the transcript from the preliminary hearing in the county court and the evidence adduced at the suppression hearing, there is no variance in Winn's testimony regarding the statements made by Swearingen.

Swearingen did not adduce any evidence to show that Winn's testimony at the suppression hearing was untruthful in any way or varied from his report or prior testimony. Swearingen had the opportunity to confront Winn at the suppression hearing and certainly could have asked him about his preparation for the hearing. And, Swearingen himself testified at the suppression hearing that Winn only asked him the one general question about what was going on that evening, thus corroborating Winn's testimony. Nothing in Swearingen's testimony indicates that his statements to Winn were not voluntary. In sum, Swearingen has not shown that improper witness tampering occurred or that he would likely have prevailed at the suppression hearing but for Swearingen having been shown the instructions document by the county attorney.

Further, even if Swearingen had succeeded on his motion to disqualify the county attorney's office and appoint a special prosecutor, the outcome of the case would not have changed as he had already entered his plea and he did not seek to withdraw his plea before sentencing. Thus, his argument that he may have had another opportunity to suppress the incriminating statements from Winn's alleged improper interrogation or worked out a more favorable plea bargain with the new prosecutor fails.

We find no abuse of discretion by the district court in its denial of Swearingen's motion to disqualify the county attorney's office and appoint a special prosecutor. Although Swearingen includes some argument in his brief concerning the denial of his motion to suppress, he did not assign such as error and we do not consider it further on appeal. See *State v. Smith*, 292 Neb. 434, 873 N.W.2d 169 (2016) (for alleged error to be considered by appellate court, appellant must both assign and specifically argue alleged error). Further, by entering his no contest plea, he waived any error regarding the denial of his motion to suppress. See *State v. Manjikian*, 303 Neb. 100, 927 N.W.2d 48 (2019) (voluntary entry of guilty plea or plea of no contest waives every defense to charge, whether defense is procedural, statutory, or constitutional).

*Excessive Sentence.*

As a subpart to Swearingen's assignment that the court erred in concluding he was not prejudiced by witness tampering, he asked us to consider whether his sentence was excessive "as a result." The only argument contained in Swearingen's brief regarding the sentence is that because he entered into a plea deal that he would not have taken but for his motion to suppress being improperly denied, he now faces a minimum of 14 years of institutionalization. He argues that this punishment is excessive, given the tainted nature of the evidence offered against him and the pervasive violations of his constitutional rights.

As noted above, Swearingen did not assign error to the denial of his motion to suppress. And we have concluded that the district court did not err in denying his motion to disqualify on the basis of witness tampering. To the extent that Swearingen's excessive sentence claim is based solely on these arguments, the claim also fails.

Swearingen does not claim that the sentence was outside the statutory limits or that the district court abused its discretion in imposing the sentence. Upon our review, we find no abuse of

discretion in the sentence imposed as it was within the statutory limits. See *State v. Lierman*, 305 Neb. 289, 940 N.W.2d 529 (2020) (sentence imposed within statutory limits will not be disturbed on appeal absent abuse of discretion).

## CONCLUSION

The district court did not abuse its discretion in denying Swearingen's motion to disqualify the county attorney's office and appoint a special prosecutor, or in the sentence imposed. We affirm the conviction and sentence.

AFFIRMED.